UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRYAN K. HAMPTON | CIVIL ACTION |
| VERSUS | NO. 12-2757 |
| MARLIN N. GUSMAN ET AL. | MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

This case was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon the written consent of all parties. Record Doc. Nos. 31. Plaintiff, Bryan K. Hampton, seeks damages pursuant to 42 U.S.C. § 1983 for the alleged use of excessive force against him by deputies of Orleans Parish Sheriff Marlin Gusman during an April 24, 2012, incident that occurred while Hampton was incarcerated as a pretrial detainee in the House of Detention facility ("HOD") of the Orleans Parish Prison system ('OPP"). A trial was held before the court on August 8, 2013.

Having considered the documentary evidence admitted at trial, the record, the testimony of the witnesses, the arguments and written submissions of the parties and the applicable law, the court makes the following findings of facts and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

## FINDINGS OF FACT

1.      On April 24, 2012, Hampton was a pretrial detainee awaiting trial on an armed robbery charge.  He was later convicted of the lesser offense of simple robbery and was sentenced to seven (7) years in prison.  At the time of trial, Hampton was incarcerated in the Madison Parish Correctional Center in Tallulah, Louisiana.

2.      On April 24, 2012, defendant Marlin N. Gusman was the Sheriff of Orleans Parish, and all other defendants, Sergeant Nicole D. Harris, Warden Carlos Louque, Sgt. Frederick Brooks and Corporal Manuel Walters, were deputies employed by the Orleans Parish Sheriff's Office, specifically assigned to work in OPP.

3.      Sometime around 11:00 a.m. on April 24, 2012, Hampton and another inmate, Danny Platt, were being held in a maximum security area for dangerous prisoners with prior violent disciplinary infractions on the 8th floor of HOD, which was then in the process of closing down and being cleared of prisoners.  While incarcerated as a pretrial detainee, Hampton had been involved in several disciplinary violations, including possession of cell phone equipment, "popping" cell door locks, and fights with other inmates, including one incident in which Hampton stabbed another inmate.  Joint Exhibit 4 in globo. Hampton and Platt became involved in an altercation with the correctional officers assigned to their area, including defendant Harris and a non-party who testified at trial, former Deputy Brandon Devezin.

4.      The incident about which plaintiff complains occurred in two phases, and he complains about separate uses of alleged excessive force in each phase: Phase I in the tier area of the HOD eight floor, when Harris used pepper spray against him; and Phase II, inside the transport elevator from the eighth floor to the second floor, when Hampton alleges that Brooks punched him in the face while shackled and without provocation, knocking him to the elevator floor, where all of the deputies in the elevator proceeded to strike, beat and kick him repeatedly.

5.      The testimony of plaintiff and his chief witness, inmate Danny Platt, conflicts starkly with the testimony of defendants as to what occurred, both on the tier itself and in the transport elevator, where Hampton alleges he sustained his most serious injuries.  Hampton testified that deputies, specifically Sgt. Brooks, punched, kicked and severely beat him for several minutes while he was handcuffed, causing a laceration over his right eye, a chipped tooth, a knot on his right arm, bruises, brush burns, soreness and aching all along his right side, wrists and testicles.  Platt testified that Hampton had been beaten in the elevator, but he stated that he was either facing the back wall of the elevator or was on the floor himself while it occurred, so he could provide few corroborating details.

6.      Brooks flatly denied that he struck Hampton in any way, and the other deputies all testified that no one struck or beat Hampton at any time.  Instead, the

deputies testified, Hampton injured himself when he kicked and pushed off against the back wall of the elevator, thrusting himself against the transporting deputies and falling to the floor of the elevator, striking his head and causing the laceration by his own physically resistant actions.

7. The testimony of both plaintiff and Platt that Hampton's injuries occurred because Harris pepper sprayed him and that Brooks and other deputies punched, kicked and savagely beat him in the elevator is entirely lacking in credibility for several reasons. First, both Hampton and Platt (convicted of murder, serving a life sentence) are felons whose convictions may properly be considered in assessing their credibility. Fed. R. Evid. 609. Second, their version of events is wholly uncorroborated and completely rebutted both by the physical evidence, including the incident reports, Joint Exhibit 5 in globo, and the medical records, Joint Exhibit 3 in globo, and by the overwhelming weight of credible testimony presented by defendants, especially the two non-defendant witnesses, Nurse Kim Pounds and former deputy Brandon Devezin. Third, the demeanor, bearing and unduly defensive and exaggerated manner of testifying by both Hampton and Platt were wholly unpersuasive and lacking in believability. Fourth, Hampton's minor injuries, as described in his medical records and by Nurse Pounds, who saw them firsthand and contemporaneously and accurately described them in her "Provider Note/Orders" report, Joint Exhibit 3, medical records, were wholly inconsistent

with his exaggerated and not believable claim that he was beaten severely by deputies.

8. The credible evidence establishes that Hampton's lacerations, bumps and bruises occurred when he resisted being transported and then lunged backward toward Brooks, pushing off resistantly from the elevator wall, losing his balance and falling in the process. Hampton's laceration and other minor injuries, as described by him, depicted in the medical records and observed by me at trial, are consistent with a fall of the type credibly described by Brooks and the other deputies who were in the elevator and <u>not</u> with a purported severe beating, including repeated punching and kicking of the kind Hampton alleges was administered by numerous law enforcement officers.

9. In summary, essentially for the foregoing reasons, I find that Hampton and Platt were <u>not</u> credible in their description of defendants' alleged use of excessive force.

10. Defendant Louque's only involvement was as an observer and supervisor. Hampton himself admitted in his testimony that neither Louque nor Sheriff Gusman had anything personally to do with his alleged beating and that neither ever placed a hand upon him. For these reasons, I orally granted defendants' motion to dismiss all claims against defendants Louque and Gusman at the close of plaintiff's evidence under Fed. R. Civ. P. 52(a)(1), and I reiterate that finding here.

11.     I specifically find that the testimony of all defense witnesses, especially Pounds and Devezin, neither of whom remains in the Sheriff's employ and therefore testified without any hint of self-interest and with complete objectivity, and Deputies Harris and Brooks, was entirely credible in every way. Their demeanor and manner of presentation and explanation, obvious candor, sincerity, complete professionalism and the sensible nature of their statements inspired total confidence in their testimony and made them entirely believable. Based on this credible testimony and the other believable evidence, I reject Hampton's allegations and find that the minimal use of force was entirely reasonable, <u>no</u> excessive force was used against Hampton, and no defendant or any other deputy unconstitutionally used force against him.

12.     Devezin credibly testified that the incident began when the inmates flooded their tier and doused the deputies with liquid. Platt physically threatened the deputies with a broken broom stick, and inmate Hampton wielded and threatened Deputy Harris with a long handle brush. According to the deputies' credible testimony and written reports, Joint Exhibit 5 in globo, inmates Hampton and Platt then refused deputies' orders to "lock down." Deputy Harris used pepper spray in an attempt to control and subdue Hampton and Platt. Because the incident had escalated, from a mere verbal dispute to the inmates' use of objects to threaten the deputies, additional officers from the Special Operations Division ("SOD") were summoned. SOD deputies placed both inmates in

handcuffs and shackles and escorted them to the elevator to be transported from the eighth floor to the second floor for interviews and treatment. Once the inmates were in the elevator, Hampton continued to resist, pushed himself off the back wall of the elevator and fell, striking his face on the elevator floor and causing the laceration to his eyebrow. Brooks caught Hampton as he fell, bringing him to the floor. I find that at no time in the elevator did any of the deputies apply any of the severe force alleged by Hampton.

    13.    After exiting the elevator, Hampton was taken to the HOD medical unit, where he was examined and treated by Nurse Pounds.

    14.    Pounds's credible testimony, corroborated by the medical records, describe Hampton's minor injuries related to the incident. Consistently with her testimony at trial, Pound's "Provider Note/Orders" report dated April 24, 2012 concerning the incident describes a "one-inch right brow laceration with minimal bleeding" and a "one centimeter abrasion to right shin." The report notes "no acute swelling or redness." Joint Exhibit 3 (medical records). Only four (4) sutures were required to repair the brow laceration. The credible description of Hampton's injuries does <u>not</u> support Hampton's allegations of a severe beating lasting for a period of minutes, from which much more serious physical injuries would be expected to be observable. The medical records

establish that the sutures were removed on May 8, 2012, and follow-up examination on May 13, 2012, yielded normal results.

## CONCLUSIONS OF LAW

1. This is a claim pursuant to 42 U.S.C. § 1983. Jurisdiction exists under 28 U.S.C. § 1331. Venue is proper in the Eastern District of Louisiana.

2. Plaintiff's claims concerning any named defendant's alleged use of excessive force on April 24, 2012, are wholly without merit, lacking in credibility and must be dismissed with prejudice.

3. As a pretrial detainee at the time of the subject incident, Hampton's claim that excessive force was used against him is properly characterized as asserting a violation of his substantive due process rights under the Fourteenth Amendment. Petta v. Rivera, 143 F.3d 895, 911 (5th Cir. 1998) ("[W]here a plaintiff's excessive force claim, whether he be a prisoner, arrestee, detainee, or an innocent bystander of tender years, falls outside the specific protections of the Bill of Rights, that plaintiff may still seek redress under the due process clause of the Fourteenth Amendment." (citing Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)); accord Gutierrez v. City of San Antonio, 139 F.3d 441, 452 (5th Cir. 1998).

4. Under the Fourteenth Amendment standard, the court must ask whether defendant's "actions caused [plaintiff] any injury, were grossly disproportionate to the

need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." Petta, 143 F.3d at 902 (citation omitted). The "'extent of injury is one factor' to be considered [along] with 'the need for application of force, the relationship between that need and the amount of force used' and other factors, . . . [but] the extent of injury is only one relevant factor and cannot be exclusively determinative under the . . . substantive due process approach." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

     5.     To the extent Hampton asserts excessive force claims under the Eighth Amendment and Section 1983, the appropriate inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 6; accord Petta, 143 F.3d at 901; Flowers v. Phelps, 956 F.2d 488, 491 (5th Cir. 1992). Plaintiff need not show a significant injury to establish a constitutional violation; however, the extent of the injury may be considered in determining whether the force used was malicious, wanton or unnecessary. Hudson, 503 U.S. at 7; Flowers, 956 F.2d at 491. In addition, "[t]he Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a

sort 'repugnant to the conscience of mankind.'" Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (quoting Hudson, 503 U.S. at 9-10).

6. The law "require[s] a plaintiff asserting an excessive force claim to have suffered at least some form of injury, . . . we do not permit a cause of action for every contact between a citizen and a police officer. In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation. When the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is de minimis for constitutional purposes." Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999) (quotation omitted). To determine whether injury caused by excessive force is more than de minimis for constitutional purposes, the context in which the force was used and all the surrounding circumstances must be examined. Id.

> 7. Assessing the reasonableness of a police officer's use of force involves "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." This balancing "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." We judge the reasonableness of an officer's conduct "objectively," that is, without reference to the subjective intent or motivation that underlies the officer's conduct. We must also look at the facts and circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." And we must account for

> the difficult and often split-second decisions that police officers must make in carrying out their duties.

Lytle v. Bexar County, 560 F.3d 404, 411 (5th Cir. 2009) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989) (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985))).

    8.    To establish a claim of excessive force, a plaintiff must show that "he suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." Peterson v. City of Fort Worth, 588 F.3d 838, 846 (5th Cir. 2009), cert. denied, 131 S. Ct. 66 (2010) (quotation omitted).

> 9.    In evaluating excessive force claims, courts may look to the seriousness of injury to determine whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction as is tantamount to a knowing willingness that it occur. Thus, the extent of [the] injury inflicted may be considered in determining whether the officers used excessive force.

Deville v. Marcantel, 567 F.3d 156, 168 (5th Cir. 2009) (quotations omitted).

    10.    Applying my findings of facts to which the foregoing legal principles, Hampton has failed to establish either a Fourteenth or an Eighth Amendment violation for the following reasons. First and most importantly, I find that Hampton and Danny Platt, the only witness who attempted to corroborate Hampton's version of events, were not credible witnesses and that their testimony cannot be credited. Hampton testified in a rehearsed manner, as if providing a rote recitation of a memorized script. His manner

of testifying was exaggerated and in conflict with both the testimony of the other, credible witnesses and the documentary exhibits, particularly the medical records, none of which support or corroborate the kind of injuries or other events involving the allegedly excessive force about which he testified. Similarly, Platt's testimony was not only subject to question given his criminal conviction but also because he admitted that he did not actually see much of what was happening to Hampton at critical points in the incident. In short, plaintiff's story about the incident that led to the allegedly excessive force in this case was self-serving and cannot be believed.

11. On the other hand, the defense witnesses were entirely credible. Their demeanor and their manner of testifying were calm, detached, detailed and highly professional. Coupled with the entirety of the circumstances, I am convinced that their account is credible. Their testimony and the documentary evidence corroborate each other without substantial discrepancies.

12. Based on the credible testimony of the witnesses and the other record evidence, I find that reasonable force was used in Phase I of the incident when Hampton verbally abused Harris and other deputies after dousing them with some sort of liquid, threatened Harris with a brush, and the deputy used pepper spray to control him. Under these circumstances, Harris used only the force necessary to restrain Hampton. In fact,

Harris exhibited creditable restraint in the face of Hampton's hostile and abusive behavior.

13. Prison officials may reasonably use pepper spray or similar chemical agents to maintain or restore order. E.g., Scott v. Hanson, 330 F. App'x 490, 491 (5th Cir.), cert. denied, 130 S. Ct. 638 (2009); Thomas v. Comstock, 222 F. App'x 439, 442 (5th Cir. 2007) (citing Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996); Soto v. Dickey, 744 F.2d 1260, 1270-71 (7th Cir. 1984)); Baldwin v. Stalder, 137 F.3d 836, 840-41 (5th Cir. 1998). Furthermore, prison officials are not required to jeopardize their own safety by attempting to segregate a few misbehaving inmates from other inmates before applying a brief burst of chemical spray into a group of inmates in a good faith use of force to restore order in a dangerous situation. See id. at 838, 840-41. The officers' use of pepper spray and minimal other force in the totality of these circumstances was not excessive.

> 14. Courts have consistently concluded that using pepper spray is reasonable . . . where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital. Furthermore, as a means of imposing force, pepper spray is generally of limited intrusiveness, and it is designed to disable a suspect without causing permanent physical injury. Indeed, pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee.

Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002) (quotation and citations omitted).

15. Hampton's allegations against Harris in this case do not amount to constitutionally excessive force. See Hawthorne v. Sheriff of Broward County, No. 06-11094, 2007 WL 5809 (11th Cir. Jan. 3, 2007), in which the Eleventh Circuit held that the force used was not excessive, when the arresting "officers could not even handcuff [the struggling plaintiff] until he was subdued with pepper spray." Id. at *4; Sargent v. Idle, No. 06-1780, 2006 WL 3539221, at *4 (7th Cir. Dec. 8, 2006) (no excessive force when arresting officer sprayed struggling plaintiff with pepper spray as officer "was trying to restore order to what he viewed as a dangerous situation"); Bing ex rel. Bing v. City of Whitehall, 456 F.3d 555, 569-70 (6th Cir. 2006) (Under Graham's "totality of the circumstances test," police officers' use of pepper gas was reasonable because "Bing posed a serious and immediate threat to others and refused to come out of his house to be arrested."); Lawyer v. City of Council Bluffs, 361 F.3d 1099, 1105 (8th Cir. 2004) (during traffic stop, officer was reasonable in using pepper spray to subdue motorist who refused officer's repeated commands to exit locked vehicle); Wagner v. Bay City, 227 F.3d 316, 324 (5th Cir. 2000) ("nothing about the use of chemical spray or even a choke-hold was objectively . . . unreasonable conduct where the suspect physically resisted arrest").

16. As to Phase II of the incident, it was Hampton whose aggressive and hostile behavior caused his fall in the elevator. Nothing about the injuries for which Hampton was later treated indicates that any defendant used force that was excessive to its need. Neither Brooks nor any of the other transporting deputies struck, kicked or beat Hampton. The credible testimony establishes that Hampton himself initiated his injuries, and that any physical contact or other measures employed by the deputies resulted in

very minor injuries and was in no way a malicious or sadistic attack. In short, because the deputies' physical contact with Hampton in the elevator was reasonable under the circumstances, plaintiff cannot establish the essential elements of his excessive force claim under Section 1983, and judgment must be entered in favor of defendants, dismissing plaintiff's claims with prejudice.

17. In addition, defendants have asserted the defense of qualified immunity, Record Doc. No. 11 at p. 3 (Ninth Defense of answer), and the credible testimony and other evidence establish that defendants are entitled to dismissal of these claims based on the affirmative defense of qualified immunity.

18. "Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lytle, 560 F.3d at 409 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

> 19. Assessing a defendant's entitlement to qualified immunity consists of two separate inquiries. First, we ask whether the facts . . . show that the defendant's conduct violated a constitutional right. We then ask whether the right violated was clearly established at the time. While it is "often appropriate" to answer these two questions sequentially, courts are vested with "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."

Sanchez, 376 F. App'x 449, 450-51 (quoting Pearson v. Callahan, 555 U.S. 223, 236 (2009); Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236).

20. However, if the court

> determines that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity. If, however, the alleged conduct amounts to a constitutional violation, then we ask the "qualified immunity question" of whether the right was clearly established at the time of the conduct.

Lytle, 560 F.3d at 410 (quoting Saucier, 533 U.S. at 202) (citation omitted). For the reasons set out above, I find that no constitutional violation occurred in Hampton's case.

21.   In summary, applying the foregoing legal standards to the facts established above, I find that any use of force against plaintiff was <u>not</u> excessive and was objectively reasonable under the circumstances. Plaintiff's resulting injuries were minimal and caused mostly by his own efforts at resistance to the deputies or from necessary physical contact that was objectively reasonable in the circumstances.

22.   Hampton conceded that neither Sheriff Gusman nor Deputy Louque was personally involved in any of the alleged acts or omissions upon which his claims are based. To hold these defendants liable, plaintiff must establish either that they were "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [these defendants] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391; Kohler, 470 F.3d at 1115. "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150,

161 (5th Cir. 2000)). In the instant action, plaintiff has failed to establish either that these defendants were personally involved in any acts causing the deprivation of constitutional rights or that a causal connection exists between an act of these defendants and any alleged constitutional violation.

23. For all of the foregoing reasons, plaintiff's constitutional rights were in no way violated in the incident of April 24, 2012.

* * * *

To whatever extent, if any, that any of the foregoing conclusions of law also constitute findings of fact, or vice versa, they are adopted as such.

Based on the findings of fact and conclusions of law set forth above, **IT IS ORDERED** that judgment be separately entered in favor of defendants, Sheriff Marlin N. Gusman, Sgt. N.D. Harris, Warden Carlos Louque, Sgt. Brooks and Cpl. Manuel Walters, and against plaintiff, Bryan K. Hampton, dismissing plaintiff's claims with prejudice, all at plaintiff's cost. Fed. R. Civ. P. 54(d)(1).

New Orleans, Louisiana, this \_\_\_\_13th\_\_\_\_ day of September, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE